UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HAIN BLUEPRINT, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:16-cv-1758-SNLJ |
| | ) |
| BLUEPRINT COFFEE, LLC, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff Hain BluePrint, Inc. ("Hain") moves for partial summary judgment (#70) as to defendant Blueprint Coffee LLC's ("BPC") liability for trademark infringement (Counts I and II) and common law unfair competition (Count III). Also before this Court is BPC's motion to exclude expert testimony of Hain's retained expert, Dr. Lisa Sheer (#67). Both motions have been fully briefed.

### I. Background

The following facts are undisputed unless otherwise indicated.

Hain is a manufacturer, marketer, and distributor of non-alcoholic beverages, including raw and organic cold-pressed juices, fruit beverages, cleanses, kombucha, tea-infused energy drinks, vinegar tonics, and variety packs. In selling its products to consumers, Hain uses a series of marks containing the word "Blueprint." Hain owns several registrations for the following marks (registration date in parentheses): "BLUEPRINT CLEANSE" (Oct. 28, 2008), "BLUEPRINTGREEN" (Sept. 13, 2011), "BLUEPRINTCLEANSE" (Oct. 11, 2011), "BLUEPRINTKIT" (Nov. 8, 2011),

1

"BLUEPRINTBAR" (May 1, 2012), "BLUEPRINTJUICE" (May 1, 2012), and "BLUEPRINT" (Jan. 14, 2014). Except for the "BLUEPRINTBAR" mark, which is limited to fruit-based food bars, the remaining six marks cover fruit-containing or fruit-based beverages and also "non-alcoholic *fruit extracts* used in the preparation of beverages." Hain primarily operates in the "functional beverage" market—the term "functional" indicating that a beverage is fortified with herbs, vitamins, minerals, caffeine, and other such micronutrients. Over the years, Hain has sold a variety of functional beverages using the "BLUEPRINT" mark, including "Morning Thunder" (a beverage containing coffee, cashew, cinnamon, and vanilla), "Miss Tang Kombucha" (a fermented tea beverage containing lime, lemon, and ginger juice), "Lemon Reset" (a cleanse beverage containing lemon, cayenne pepper, and agave), and "Daily Apple Cider Vinegar Tonic" (a vinegar-based tonic beverage containing turmeric, apple, and lemon juice).

On February 24, 2013, BPC was formed. On September 2, 2013, BPC opened its first coffee shop in the Delmar Loop in St. Louis, Missouri. Using the mark "BLUEPRINT COFFEE," BPC began selling "specialty-grade" coffee beans and coffee beverages (as well as teas, sparkling water, and hot chocolate, among other things). By 2014, BPC expanded its offerings to include fruit-containing coffee alternatives. BPC has, at least occasionally, advertised these fruit-containing coffee alternatives on its Facebook site using the "BLUEPRINT COFFEE" mark.

Both Hain and BPC sell their products online. Both also sell their products at Whole Foods Market grocery store locations in and around St. Louis. However, Hain and

BPC disagree on the specifics of which of their products are sold either online or at Whole Foods Market. BPC asserts the only product it sells outside of its coffee shops is bagged whole-bean coffee, both at Whole Foods Market and online. BPC is emphatic that it does not sell, and has no intention to sell, pre-bottled products—citing quality concerns. On the other hand, Hain's business is the sale of its pre-bottled coffee- and fruit-containing beverages both online and at Whole Foods Market. Notably, the parties dispute whether Hain currently sells any coffee-containing beverage at Whole Foods Market.[1]

On September 15, 2014, BPC applied for a trademark registration for "BLUEPRINT COFFEE." Hain learned of BPC's application on March 3, 2015, and filed a Notice of Opposition to the "BLUEPRINT COFFEE" mark on June 30, 2015. That application remains pending with the U.S. Patent and Trademark Office. On November 11, 2016, Hain filed the instant three-count lawsuit against BPC. Hain alleges that BPC, in using the BLUEPRINT mark, is liable both for trademark infringement under the Lanham Act, Sections 15 U.S.C. §§ 1114 and 1125, and for common law unfair competition. Hain moves for partial summary judgment—on liability—arguing that "it is undisputed that [Hain] has the exclusive and nationwide rights to use [the] mark BLUEPRINT in connection with non-alcoholic beverages" and that "there is no genuine dispute of material facts that BPC uses the identical term 'BLUEPRINT' in its

---

[1] The parties also disagree as to exactly when Hain began selling a coffee-containing beverage. They agree that Hain began selling a coffee-cashew beverage in retail stores in 2014, and that this beverage was eventually named "Morning Thunder" in 2016. However, they disagree when Hain "first introduced" the coffee-cashew beverage to retailers.

3

BLUEPRINT COFFEE mark in connection with its sale of identical goods." In response, BPC argues Hain has failed to prove it has priority in the mark. Further, BPC argues Hain has failed to prove that it has exclusivity with the BLUEPRINT mark in connection with coffee and coffee shop services, as distinguished from fruit-based functional beverages.

**II. BPC's Motion To Exclude**

As a preliminary matter, BPC moves to exclude the testimony and consumer survey of Hain's retained expert, Dr. Lisa Sheer, a marketing professor. Hain hired Sheer to conduct a survey to determine if there is a likelihood of confusion between the parties' respective goods and services.

This Court is responsible for ensuring "any and all scientific testimony or evidence" rests on a "reliable foundation" and is "relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 597 (1993). To be sure, the Supreme Court acknowledged that "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 596. But, where the evidence is not merely shaky, but is unreliable, does not related to any issue in the case, or is prejudicial despite being relevant, it should be excluded. *Id* at 589-592, 595; *see also* FED. R. EVID. 401, 403, 702.

Consumer surveys are, by their nature, imperfect and may therefore ordinarily be tested for their weight rather than outright excluded. *Viacom International v. IJR Capital Investments*, LLC, 891 F.3d 178, 197 (5th Cir. 2018); *see also* 6 MCCARTHY ON

4

TRADEMARKS § 32.178 (5th ed.). However, "a survey can be so badly flawed that it cannot be used to demonstrate the likelihood of consumer confusion." *Viacom*, 891 F.3d at 197; *see also 1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1246 (10th Cir. 2013).

The case at hand involves a claim for "forward confusion" or "direct confusion"—a situation in which "a junior user of a mark attempts to free-ride on the reputation and goodwill of the senior user by adopting a similar or identical mark." *Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 470 (3rd Cir. 2005). In a forward confusion case, the proper universe of consumers to be surveyed are the purchasers of the junior user's goods and services—BPC in this case. *See Big Dog Motorcycles, LLC. v. Big Dog Holdings, Inc.*, 402 F. Supp. 2d 1312, 1334 (D. Kan. 2005); *Hutchinson v. Essence Comm's*, 769 F. Supp. 541, 559-60 (S.D.N.Y. 1991); 5 MCCARTHY ON TRADEMARKS § 32.159 (5th ed.). When surveys do not appropriately target the junior user's goods and services, including the particular venues where these goods and services can be found, they have been routinely excluded as unhelpful to a jury. *See, e.g., Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.,* 502 F.3d 504, 518 (6th Cir. 2007) (concluding survey was properly afforded less weight where it failed to limit the universe of consumers to those who acquired wine through wine tasting rooms, the primary distribution method of defendant); *Big Dog Motorcycles*, 402 F. Supp. 2d at 1334 (disregarding consumer survey that broadly targeted prospective purchasers of "all t-shirts and caps" rather than purchasers of "t-shirts and hats at motorcycle dealerships" where junior user focused its business); *Weight Watchers Intern, Inc. v. Stouffer Corp*., 744F.Supp. 1259, 1272-1273

(S.D.N.Y. 1990) (consumer survey, which surveyed consumers in shopping malls, was inappropriately broad where it selected consumers who purchased "frozen food entrées" and "tried to lose weight" in the past six months, but did not narrowly and appropriately select consumers who had purchased a "diet frozen entrée" or tried to lose weight through dieting, the actual market of defendant).

Here, BPC argues Sheer's survey is not relevant because it is too limited in scope. The survey was limited to "products sold in **grocery stores that feature natural, organic and healthy foods** such as Whole Foods, Natural Grocers, Traders Joes, [etcetera]." (emphasis in original). This limited scope captures neither the full range of BPC's goods and services nor its primary distribution venues. While the survey captures one distribution venue of BPC's single good—the sale of its bagged whole-bean coffee at grocery stores—it says nothing about BPC's online sales as a discrete venue in itself. Moreover, the survey says absolutely nothing about BPC's primary business as a coffee shop, targeting neither BPC's coffee shop services (e.g. the sale of hand-made coffee drinks and fruit libations) nor the coffee shop as a specific distributive venue in itself. The survey is simply too narrowly focused and, thus, does not capture BPC's primary business as a coffee shop with limited online and retail sales of its bagged whole-bean coffee.

Indeed, the survey prefaces that "BLUEPRINT produces non-alcoholic beverages using plant-based ingredients" and then inquires whether those surveyed might be confused when they see an unidentified product called "Blueprint Coffee." That inquiry—focused on beverage-purchasing grocery shoppers—may sufficiently capture

6

the consumers who also grocery shop for BPC's bagged whole-bean coffee; however, as *Leelanau Wine Cellars, Ltd., Big Dog Motorcycles, LLC., * and *Weight Watchers Intern, Inc.* point out, such a survey says little-to-nothing about BPC's primary business as a coffee shop. In fact, Dr. Sheer explains that her survey "was conducted to determine ***whether consumers at Whole Foods Markets*** … would believe that a product bearing the BluePrint Coffee Mark is affiliated with the BLUEPRINT line of beverages." (emphasis added.) The scope of this objective lays bare that it targets only one venue and one aspect of BPC's business—its bagged whole-bean coffee goods sold at Whole Foods Markets. Given that the parties agree that BPC's primary business is its coffee shop services (with some online sales for its bagged whole-bean coffee), the survey is simply too narrow to be sufficiently relevant to BPC's primary business. *See Big Dog Motorcycles, LLC.*, 402 F.Supp.2d at 1334; *Leelanau Wine Cellars, Ltd.*, 502 F.3d at 518; *Weight Watchers Intern, Inc.*, 744F.Supp. at 1272-1273.

The survey suffers from other defects as well. A "legally-probative estimation of consumer confusion must be tethered to marketplace conditions." *THOIP v. Walt Disney Co.*, 690 F. Supp. 2d 218, 237 (S.D.N.Y. 2010); *see also Simon Property Group, L.P. v. mySimon, Inc.*, 104 F. Supp. 2d 1033, 1041-42 (S.D. Ind. 2000). In this case, however, the survey provides no contextual reference to how consumers would see the word "BLUEPRINT" in the grocery store setting. There is no reference, for example, where in the store BPC's bagged whole-bean coffee is sold in relation to where Hain's pre-bottled beverages are sold. There may well be a difference in consumer perceptions, in other words, if BPC's bagged whole-bean coffee is sold in aisle two and Hain's pre-bottled

7

beverages are sold in aisle ten. Because the survey fails to adequately consider actual marketplace conditions, it is an unreliable indicator of consumer confusion. *Id*. at 241.

Defendant also argues the survey is too suggestive in comparing Hain's and BPC's products. The survey begins by mentioning that "BLUEPRINT produces non-alcoholic beverages using plant-based ingredients." It goes on to ask "On your next grocery shopping trip, you notice a product"—only the label of "BLUEPRINT COFFEE" is shown without the assistance of any pictures or product models—"would you think that this coffee is part of the BLUEPRINT beverage family?" The questions suggests that the "coffee" referred to is a "beverage" (perhaps a pre-bottled beverage akin to Hain's goods) or else is in beverage form. But, again, BPC's only "product" at grocery stores is its bagged whole-bean coffee. By asking whether "this coffee is part of the BLUEPRINT beverage family," the question inappropriately suggests to the reader that "coffee" refers to some sort of drink or beverage, not necessarily coffee found in the form of beans. The question, therefore, appears to ease readers into finding a correlation based strictly on a similarity of name, rather than a similarity of products. Thus, this further renders the survey an unreliable indicator of consumer confusion. *See, e.g., Scott Fetzer Co. v. House of Vacuums, Inc*., 381 F.3d 477, 488 (5th Cir. 2004).

Ultimately, *Daubert* cautions that Rule 403 permits exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Daubert*, 509 U.S. at 595-596 (quoting FED. R. EVID. 403). The above-described flaws lead this Court to conclude that the survey—while marginally relevant in the limited grocery store setting—would do more

harm than good by confusing the issues, misleading the jury, and potentially wasting time. *See* FED. R. EVID. 403. The survey does too little to capture the perceptions and opinions of those actual buyers of BPC's goods and services, and the actual marketplace conditions faced by those buyers, so as to meaningfully assist the jury in determining likelihood of confusion. BPC's motion to exclude will be granted.

**III. Hain's Motion For Partial Summary Judgment**

As an initial matter, the Court notes Hain's three claims—trademark infringement under 15 U.S.C. § 1114 (Count I), unfair competition under 15 U.S.C. § 1125 (Count II), and common law unfair competition (Count III)—share the same essential elements. *See*, *e.g.*, *Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc*., 908 F.3d 313, 322 (8th Cir. 2018); *Sensient Tech. Corp. v. SensoryEffects Flavor Co*., 636 F. Supp. 2d 891, 898 (E.D. Mo. 2009). Hain must show: (1) that it owns a valid, protectable mark; and (2) that there is a likelihood of confusion between its mark and BPC's mark. *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 386 (8th Cir. 2009). However, the three claims apply to different categories of trademarks. Section 1114—also known as Section 32 of the Lanham Act—applies to the infringement of *registered* trademarks; whereas, Section 1125—Section 43(a) of the Lanham Act—applies more broadly to both *registered and unregistered* trademarks. *See Matel v. Tam*, 137 S.Ct. 1744, 1752-53 (2017). Likewise, Hain's common law unfair competition claim does not require registration and, in fact, is most often used to enforce unregistered trademarks. *See Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1219 (10th Cir. 2004); *Pennell v. Triton Media, LLC*., 2013 WL 12131202 (W.D. Tex. Jan. 10, 2013); 1 MCCARTHY ON

TRADEMARKS § 4:6 (5th ed.). Hain asserts that its claims are entitled to summary judgment as a matter of law because it is undisputed that (1) Hain owns federal trademark rights in the mark BLUEPRINT; (2) Hain has the exclusive and nationwide rights to use the mark BLUEPRINT in connection with non-alcoholic beverages; and (3) BPC uses the identical term "Blueprint" in its BLUEPRINT COFFEE mark in connection with its sale of identical goods. Further, Hain asserts that BPC's conduct is likely to cause and already has caused consumer confusion. Because the Court concludes that there is a disputed issue of fact with respect to whether Hain's BLUEPRINT mark applies to BPC's business—coffee and coffee shop services—the Court will deny Hain's motion for partial summary judgment.

### A. Hain's Registered Trademark

Count I is brought under Section 32 of the Lanham Act. 15 U.S.C. § 1114. The Lanham Act provides that a person who uses a registered mark in connection with the sale of any goods or services, without consent and in a manner likely to cause confusion, is civilly liable to the registrant. *Council of Better Bus. Bureaus, Inc. v. Bailey & Associates, Inc.*, 197 F. Supp. 2d 1197, 1211 (E.D. Mo. 2002) (quoting 15 U.S.C. § 1114(1)). Registration of a trademark is *prima facie* evidence of the validity of a plaintiff's trademark. *Id.* Again, Hain asserts that there is no genuine issue of fact with respect to its trademark over the BLUEPRINT name.

BPC counters that Hain's BLUEPRINT mark does not have priority with respect to coffee and coffee shop services, which are BPC's business. Notably, a registered trademark is limited by statute to cover only those "goods or services specified in the

certificate." 15 U.S.C. § 1057(b). As one court aptly noted, "[a plaintiff's] claim that its mark is incontestable can apply as a matter of law only in connection with goods and services for which the mark was originally registered." *interState Net Bank v. NetB@nk, Inc.*, 221 F. Supp.2d 513, 520 (D.N.J. 2002). When registering a trademark, the U.S. Patent and Trademark Office assigns one or more of forty-five "classes" to the mark. *See* 37 C.F.R. § 6.1. Hain's marks cover goods under class 29 (preserved, frozen, dried and cooked fruits and vegetables) and class 32 (fruit beverages, fruit juices, syrups, other preparations for making beverages), as well as services under class 44 (medical services). Notably, they do not cover goods under class 30 (coffee) or services under class 43 (food and beverage services, *e.g.*, coffee shop services). And nowhere is the word "coffee" or the phrase "coffee shop" found in the mark certificates.

Hain responds that its marks need not apply expressly to coffee because coffee is a "fruit extract," and Hain's registrations list "non-alcoholic fruit extracts used in the preparation of beverages." Hain supports its argument with testimony that coffee is extracted from a coffee cherry—a fruit. The Court declines Hain's invitation to decide as a matter of law that Hain's registration includes coffee, particularly in light of the registration scheme, which includes separate registrations for "coffee" and "coffee shop." Hain did not register its mark under those classes, and this Court will not expand Hain's mark, by implication, to include those classes given the "[as] specified" limitation imposed by Section 1057(b).

### B. Priority of Use

Next, BPC argues that it—not Hain—has priority over the BLUEPRINT mark as it applies to coffee and coffee shops because BPC was the first to use the mark in that context. In that regard, BPC opened its retail coffee shop on September 2, 2013, but Hain, as BPC alleges, did not sell its first bottled coffee beverage until sometime after April 2014.

Hain responds that its trademark rights extend to cover coffee under the so-called "natural expansion" doctrine. *See, e.g.*, *Planetary Motion, Inc. v. Techsplosion, Inc*., 261 F.3d 1188, 1201 (11th Cir. 2001). It is unclear whether the doctrine has been adopted in the Eighth Circuit. Nonetheless, according to Hain, its "eventual sale of its own coffee beverages was a natural expansion of its already wide variety of [fruit-based] beverages; therefore, [its] trademark registrations provide priority in coffee products." This Court, however, disagrees that the natural expansion doctrine would expand a trademark's scope of registration. A registered trademark is limited by statute to cover only those "goods or services specified in the certificate." 15 U.S.C. § 1057(b).

Although Hain does not clearly explain its position, theoretically the natural expansion doctrine may provide priority for an unregistered use, which would be applicable to plaintiff's Counts II and III. As courts in other jurisdictions have stated, "use of a mark in connection with one good or service could also give priority of use in connection with a second good or service, if the two are closely related." *Kerzner Intern. Ltd. v. Monarch Casino & Resort, Inc*., 675 F. Supp. 2d 1029, 1045 (D. Nev. 2009); *see*

*also Planetary Motion, Inc. v. Techsplosion, Inc*., 261 F.3d 1188, 1201 (11th Cir. 2001).[2]

Even if this Court were to adopt the natural expansion doctrine, Hain, by focusing broadly on the relatedness of coffee and fruit "beverages," has not adequately demonstrated that the doctrine applies. The doctrine focuses on the relatedness of two goods and/or services. But, Hain's focus on the amorphous concept of "beverages," rather than on the relatedness of the particular goods and services at issue in this case, makes it difficult to apply the doctrine. Coffee, for example, could be sold as a pre-bottled drink (Hain's use), in the form of bagged beans (BPC's use), or as part of a coffee shop service (BPC's use). Though Hain may have a point if this case narrowly concerned two users selling pre-bottled goods with the question being whether it is "natural" for a fruit-based bottled drink company to expand into a coffee-based bottled drink company. That isn't the issue here.

Rather, Hain does not explain how its fruit-based bottled drink company is closely related to BPC's coffee shop as a service. Nor does Hain explain why it would be natural for a fruit-based bottled drink company—what Hain explains is a "functional beverage" company typically selling cleanses, tonics, kombucha, and vitamin-infused fruit juices—to expand into the sale of bagged whole-bean coffee. Courts have routinely refused to

---

[2] It has been said that the natural expansion doctrine is merely an apparatus of the likelihood of confusion test under the second element of Hain's claims. *See* 4 MCCARTHY ON TRADEMARKS § 24.20 (5th ed.) (describing the doctrine as "an unnecessarily complicated application of the likelihood of confusion of source or sponsorship test to a particular factual situation"). However, the determination of priority and the determination of a likelihood of confusion are "independent inquiries." *Carnival Brand Seafood Co. v. Carnival Brands, Inc*., 187 F.3d 1307, 1311 n. 4 (11th Cir. 1999). Thus, while product relatedness is an important factor of the likelihood of confusion test, *see, e.g., Davis v. Walt Disney Co.,* 430 F.3d 901, 904 (8th Cir. 2005), the parties here argue specifically whether certain goods and services are so "closely related" so as to permit *priority rights* to be "naturally expanded" pursuant to the doctrine.

apply the doctrine where the facts do not make clear an actual proximate relatedness between goods and services. *See, e.g., Kernzer*, 675 F.Supp.2d at 1035 (refusing to find that restaurant services and casino services are closely related even in the context of Nevada's extensive casino operations that sometimes blend the two); *Carnival Brand Seafood Co. v. Carnival Brands, Inc.*, 187 F.3d 1307, 1310-1311 (11th Cir. 1999) (holding there was a genuine issue of fact as to whether it would have been "natural" for plaintiff's predecessor to expand from boxed raw shrimp into ready-to-eat chicken and seafood gumbo as of the time of defendant's first use); *Physicians Formula Cosmetics, Inc. v. West Cabot Cosmetics*, 857 F.2d 80, 82 n. 1 (2d Cir. 1988) (defendant's prior use of mark on hard-bar soap did not extend to give priority to use similar mark in connection with cosmetics and skin creams, and so intervening user had priority); *Clark & Freeman Corp. v. Heartland Co. Ltd.*, 811 F. Supp. 137, 142 (S.D.N.Y. 1993) (plaintiff's senior rights in mark with respect to women's boots did not extend to give priority over defendant's intervening use of the mark with respect to shirts, sweaters, trousers, and jackets); *see also In Re Coors Brewing Co.*, 343 F.3d 1340, 1345 (Fed. Cir. 2003) (beer as a good and restaurant services, which included the sale of beer, were not sufficiently related so as to preclude brewing company's use of "BLUE MOON" mark despite restaurant's pre-existing use of similar "BLUE MOON" mark). Because Hain has not explained how the particular goods and services at issue in this case are closely related, the Court declines to apply the natural expansion doctrine here and finds there are genuine factual disputes remaining on the issue of priority that prevent the granting of summary judgment.

### C. Likelihood of Confusion

Because Hain has not yet proven that the first element of its claims is indisputable and established as a matter of law, the Court need not consider the likelihood of confusion test under the second element. However, the Court is satisfied that disputed issues of fact exist with respect to this element as well.

### D. Affirmative Defenses

Finally, Hain moves for summary judgment on two of BPC's affirmative defenses—laches and equitable estoppel. Hain argues BPC has produced no evidence to support these defenses, and points out the facts actually show that it timely filed a notice of opposition with the U.S. Patent and Trademark office upon first learning of BPC's use of the "BLUEPRINT" mark. Hain contends that BPC has no evidence that Hain delayed in asserting its rights or that it acquiesced to BPC's use of the "BLUEPRINT" mark.

Affirmative defenses are assertions by a defendant raising new facts and arguments that, if true, defeat a plaintiff's claims. Therefore, the defendant bears the burden of proof with respect to its affirmative defenses. *Perrin v. Papa John's Intern., Inc.,* 114 F.Supp.3d 707, 720 (E.D. Mo. 2015). Although a plaintiff seeking summary judgment on an affirmative defense must first "inform [] the district court of the basis for its motion and identify [] those portions of the record which show a lack of a genuine issue," there is no requirement that the plaintiff "support its motion with materials negating the affirmative defense." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Instead, it is the defendant who must "present evidence sufficient to create a genuine issue of material fact to survive a properly supported summary judgment

motion." *Crotty v. Dakotacare Admin Servs., Inc.*, 455 F.3d 828, 831 (8th Cir. 2006). Concordantly, when the defendant "fails to make a showing sufficient to establish an essential element of a defense on which it will bear the burden of proof at trial, Rule 56(c) 'mandates the entry of summary judgment' against it." *Perrin*, 114 F. Supp. 3d at 721 (quoting *Celotex*, 477 U.S. at 322); *see also* FED. R. CIV. P. 56(c)(1).

BPC did not respond to Hain's arguments regarding BPC's affirmative defenses for laches and equitable estoppel. Having failed to show that it can establish the essential elements of these defenses, they will both be stricken pursuant to Rule 56.

## IV. Conclusion

For the reasons set forth above, this Court will grant BPC's motion to exclude the consumer survey of Dr. Sheer and will grant in part and deny in part Hain's motion for partial summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Blueprint Coffee LLC's motion to exclude the expert testimony and survey of Lisa Sheer (#67) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff Hain BluePrint, Inc.'s motion for partial summary judgment (#70) is **GRANTED IN PART and DENIED IN PART**.

**IT IS FINALLY ORDERED** that Hain's motion will be **GRANTED** only as to BPC's affirmative defenses for laches and equitable estoppel. Those defenses are hereby **STRICKEN**.

So ordered this 29th day of November 2018.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE